The Honorable, the judges of the United States Court of Appeals for the 4th Circuit. Oh yay, oh yay, oh yay. All persons have any manner, form, or business before the Honorable United States Court of Appeals for the 4th Circuit are admonished to give their attention, for the Court is now sitting. Godspeed to the United States and this Honorable Court. All right, good afternoon. Judge Qualivine, Judge Sacker, myself, want to welcome you to the 4th Circuit for your argument. Mr. Redman, you may proceed. Thank you, Your Honor. May it please the Court, I'm Michael Redman on behalf of Appellant Gerald Goldstein and Cross Appellee of the Baltimore Police Department. Your Honors, people like stories. Stories are how the human mind makes sense of the world. Our brain takes the sound and fury of life and shapes them into stories to understand them. And we do this, we make and believe these stories even when there are facts missing, even when we have no evidence for key elements. We just fill in the blank spots. We guess, we speculate because the facts we make up fit the story. This psychological narrative bias or narrative fallacy is simply part of how our brains work, but it is not how the federal courts work. Here we demand evidence, direct or circumstantial, it needs to be there. And if there's an inference, it needs to be a reasonable inference. Not just a possibility, not just a coin toss, it has to be probable, more likely than not, a preponderance. But aren't you actually asking this Court to speculate as to what the jury did here? No, Your Honor, because there were only really three pieces, there are only three possible sources of liability that in the judge's charge, he laid out and explained there is no evidence that shows or even supports a logical inference that Detective Gerald Goldstein withheld any exculpatory evidence from saving Burgess. Because of this lack of sufficient evidence to support the verdict, the judgment against Goldstein must be reversed. And even if evidence did suffice, Goldstein at the very least must be given a new trial due to two separate grossly prejudicial errors. And so is this, is your argument on this going both toward the Brady verdict on the Howard Rice part and also to the fabrication of evidence piece of the verdict? Absolutely. Really the fabrication of evidence, the only fabrication of evidence charged to the jury was that of the report saying the children were all asleep. And that's really just a secondary, a way of restating the Brady claim that he withheld evidence that Rainey was awake. Now, Mr. Burgess's attorney is a great storyteller. He wove a compelling tale about Goldstein's alleged misdeeds in 1994. Counsel, counsel, counsel, I just want to make sure I understand how these things relate. You mentioned the two evidentiary things, and I'm not trying to get you to jump ahead, but I think those are the, at least include the FBI notes and the evidence and jury charge issue about Howard Rice, little man issue. So this is not at all to suggest anything. I'm just trying to make sure I understand how the claims relate. If, if, if hypothetically, we were to disagree with you that there's and believe there is sufficient evidence on about withholding information about what Brian said. And we also agree with you on the two evidentiary matters. What, what, what do we do with that? Then Gerald Goldstein is absolutely entitled to a new trial. If, if, if we, if you don't find me for, for him on the insufficiency of evidence, then both the rule 807 error and the instructional error, both would require a new trial because the, he has been grossly prejudiced by both of them. But, but if you, I thought you just said that the fabrication count involved essentially was the flip side of the Brian Ramey information. So why would you get a new trial on the fabrication if it's just that, if we were to find there was sufficient evidence, how does the evidentiary matters relate to the fabrication claim? Well, they all relate together because once you have the evidentiary one or the, the evidentiary, once the ITAR drug related murders notes are let in and are being able to be used as a cumulative amount of circumstantial evidence, all these various things that show they undermine any credibility that Mr. Goldstein had in the jurors mind because all these things, all these partial things that none of them were actually proved, but all these partial things create a bias against him as they're more and more are put there. They make everything else seem less and less believable that he has to say. And also there, this was a no idea which of the particular things the jury found. This was, was the thing we are actually. Yeah, but that's. No, no, no, it's. Go ahead, Judge Sacker. It's not really that. It's two different. The jury marked off the Brady claim found for the plaintiff. Now there, there were three different theories and, and I'm not sure we can tell which theory the, the jury may have found liability on for that. But then there's the second separate fabrication claim that the jury found also for the plaintiff. The, the issue I think is there's then one lump sum verdict of 15 million and how do we know how much of that 15 million was attributable to the plaintiff? You know, where, where, what dollar amounts were attributed to one or other really is damages for the suffering. But the prejudice of either of the two, the jury charge or the 807 charge, these were extraordinarily prejudicial to, to every claim. Even the fabrication claim, the one about whether they believe that a unidentified uniformed officer told Goldstein about this just because they should, he should have. All of that depends on the, the credibility of, of what they think about everything else that the, that Goldstein has testified to. So, Mr. Redmond, do you, do the ITAR notes permeate both claims that in this case are just one? The, I think they, they permeate both. They permeate the, the question of, of Mr. Goldstein's credibility, which is to every single claim here. And once you have that in there, as it's grossly prejudicial to the jury's opinion of him, because as... Do they only, do they, is that the only way they permeate, that it permeates the both claims, his credibility? Because the, the jury is the judge of his credibility. Absolutely. Not us. We can't judge that credibility. That's improper. It's poisoned their analysis with... So, but could, do you have another argument about the way in which it permeates both claims other than credibility? Well, the question of how it gets to... The problem with the notes permeate the fabrication claim. The problem, okay, so the fabrication claim is only, and only that he, that he knew that, that Brian Rainey was awake and wrote down that instead it was asleep, that instead all the children were asleep. So, in order to say that the, that the, that this happened, they have to believe that he's, that he's doing this, that he is willing to make these claims, or make up things, and the evidence... But the district court split that up in its, in its summary judgment ruling. The district court apparently didn't find that the two were so intertwined, because it didn't grant summary judgment on the fabrication claim, only on the Howard Rice part of it. Yes, Your Honor. They, he, they didn't grant summary judgment on the fabrication claim, specifically because he thought that there was a, that there was a possibility that, okay, maybe you could create a, a evidence, or show evidence that, that he knew that he was actually asleep. And that was the, really the flip side of one another. He was asleep and withheld that, about not having that. Mr. Rick, Mr. Rick, Mr. Redmond, how is the residual hearsay rule violated in this case? Because the rule itself specifically says that the notice provided must include the name of the declarant. Now, that is in the text of the rule itself. It is in this court's opinion in the text. The name of the declarant has to be provided. And the First Circuit and the Third Circuit both include, both have cases where it's Mitchell and Ricciardi, both say the same thing. And then Rothstein's federal evidence says exactly that as well. It is, if the, and this is Rothstein's Federal Rule of Evidence, Third Edition, page 954, says the same quote, if the name and address are unknown, the catch-all cannot be used and the risk falls on the offeror. So, it's clear that the declarant, you know, there, there was no declarant named in these notes. The FBI was not the declarant in these notes. A specific FBI employee or informant was the declarant. And we have no idea who that is. The rule was not met by its own terms. And Goldstein was incredibly prejudiced by this, by itself should require a new trial. And just to see the prejudice of this, of the ITAR notes, we need look no further than Burgess's closing argument on page 1975 of the Joint Appendix, where counsel argues that the, argued the ITAR notes first and then say, quote, this case is over. I mean, I could stop talking now and we could all go to lunch early, but I'm going to keep talking. I mean, that is how powerful these notes were in the story that Mr. Burgess's counsel were, was creating. And he needed all the half-proven claims that he could get to try to make it all seem compelling to the jurors. Was there an opportunity to object to that at trial? The, that was made into motion in Lemony. It was made, I believe, at, Okay. You're talking about after trial, right? Or are you talking about? Before trial, it was made into motion in Lemony. It was all discussed there. And at the jury charge, but then was there an opportunity to object when that statement was made in closing? Well, the court instructed not to have any objections in closing, but again, the cat was already out of the bag. Not even to approach the bench after closing? The cat was really out of the bag already. The things had already been admitted and that's what we were arguing was prejudicial. And this was just simply evident. And I think that, and I think the court did acknowledge, did say during the jury charge that your objection to at least that jury instruction was noted for the record, right? Absolutely. They, he said, he said, nobody agrees with anything I say about this charge. You can take it to the fourth circuit. Whoever wants to can. The judge specifically said that in the record. And I see him out of town for my opening. So I will reserve the rest of my time. Thanks, sir. You do have some time Mr. Loewe. Thank you. May it please the court. My name is John Loewe and I represent Mr. Burgess. And I do want to talk about the fabrication count, but before I begin, I just want to put this in context. They're talking about one evidentiary ruling in the course of a two week trial with a dozen witnesses and hundreds of exhibits. And they're talking about a jury instruction that they never profit. That's the sum total of the errors that they're putting before you. They're talking about, they're talking about something being argued in front of the jury that the district court had ruled in their favor in summary judgment. And let me address that. I'd like to stop there. All right. Summary judgment was a 50 page order. There were two paragraphs saying, don't make an argument that Howard Rice's name was withheld from you because you knew it. At trial, there was a stipulation read. Howard Rice's name was a name known to plaintiff's counsel. It can't be the support of a Brady. Then the trial happened. In opening, I started talking about little man in the Lehman notes as being an alternate suspect. And there was no objection. And we argued that they suppressed it. The court did tell him they could not, both sides, I think, could not object during closing, which is not unusual for a court to say. I saw that in the transcript. Your Honor, I'm talking about opening and there were objections in closing, but I'll get to closing in a minute. In opening, I laid out, we are going to prove to you that they suppressed the little man evidence. There was no objection after the opening. Then came the witnesses and we did it with Goldstein. We argued, Mr. Goldstein, isn't it suppressed the Lehman note and the little man? In opening, did you say Howard Rice in connection and tie it together with little man? Little man was independent. That's the key. That's the key. Howard Rice's name is not on the Lehman note. The Lehman note is exculpatory because it says someone called the family from jail and said someone named little man did. That note never made it to the prosecutor in a case with weak evidence that would have been exculpatory. But counsel, but then and I know you said you're coming to closing, but then you you may have said little man in opening, but in closing you say little man, little Howard, and you blend them and then say Howard Rice. So if you're talking about there being a distinction, maybe it was okay not to object then. I mean, it seems like by the end of the case, you're kind of going all out on it. Let me lay the context because I wish this was clearer from our new brief. The entire trial, we argue that they suppress the little man evidence. We did it with Goldstein. We did it with Lehman. We did it with Ritz. We did it with Dyson. We did it with both experts. That's what the whole trial was about. And they want you to say on appeal, Judge Quattlebaum, everybody knew this was out of bounds. If everybody knew this was out of bounds, why was there no objection during the entire trial when we put this theory on? Because it's a pretextual argument. You got two universes. They're saying everybody knew it was out of bounds. We're saying no, they didn't. It was the whole trial. How do you break that tie? Judge Bennett agrees with us. He wrote the summary judgment order. He presided over the trial, and he says, I don't think this violated my summary judgment order. So you got plaintiff and Judge Bennett saying no. You got the defendants trying to convince you yes, but Judge Quattlebaum, look how the trial played out. I asked Mr. Goldstein. Mr. Levy, Mr. Levy, I have a question. Assume that we disagree with you as to the Brady piece of it. Can we still uphold the verdict on the, based only on the fabrication claim? Absolutely. And you know, he had no satisfaction. How do we know which claims the jury relied on to award the $15 million in damages? Your Honor, this is a very easy appeal because there were multiple claims. Fabrication is unchallenged. If they believe Brian Rainey, he told the police. So that claim stands. Now to your question about damages, I would respectfully submit that it's a porn book. The jury was asked two questions. Did the defendants cause a constitutional injury? And how much was Mr. Burgess damaged? This is not a case where they said this claim is worth $6 million. That claim's worth $4 million. There's a single unitary injury. Mr. Burgess suffered wrongful imprisonment, destruction of his life, and the jury valued that at $15 million. Mr. Goldstein is liable to pay that $15 million if we can prove him culpable or liable on any surviving theory of liability. If we prove the Brady violation, he's on the hook for the $15 million. If we prove a fabrication, he's on the hook for the $15 million. If we prove intentional infliction, he's on the injury. So the appeal is over. But I do want to return to the little man thing, because I realize that this is an unusual appeal. Mr. Lovie, I know you want to do it. We're going to give you time. I'll probably be quick. But before you get back to that, the issue about upholding the fabrication, I think what I heard your colleague argue was that when you have a claim like fabrication, that here, at least they say, is the evidence, even if you prevail, is thin, and that credibility becomes all that important. Why, if you were hypothetically arguing two improper grounds about credibility, would that not affect the credibility issue concerning Brian Ramey? Your Honor, they were completely distinct theories of liability. And Your Honor, I realize that you called that thin. It wasn't thin. If they believe Brian Ramey, if they believe Brian Ramey. I wasn't, let me just be clear. I wasn't saying it was thin as a conclusion. I was saying they're suggesting that that was more of a hypothetical. So I don't want you to think I'm calling anything about your evidence. Fine. Brian Ramey says, look, I saw my mother's killers. The police asked me that night. They asked me if it was the boyfriend. I said it wasn't. I said it was two men. And there's a contemporaneous Lehman note. So he's not making this up years later. It's a contemporaneous note. If Goldstein fabricated a report to hide that, saying that the kids were sleeping, then that's a standalone constitutional claim. And, you know, for you to say that, well, there was some evidence that was improperly admitted, even though there was no objection during the entire trial to any of the little man evidence, that doesn't mean that you can throw out every count. But listen, I mean, it wasn't it isn't accurate that that the little man wasn't tied to Howard Rice or little Howard or those sorts of things that Judge Quattlebaum went through until closing argument. Now, that's not true, Your Honor. I mean, throughout the trial in this throughout the trial transcript, throughout the trial, there was a lot of discussion about whether Howard Rice was little man throughout. You know, we some witnesses said no witnesses. They pointed out no witness said that Howard Rice's nickname was little man. His nickname was little Howard. So it was never proved that he was little man. We the plaintiff with various witnesses explored whether it could have been the same person. Again, this is the case that was tried without objection for two weeks. And then after closing argument, they tried to proper a jury instruction, but the case got tried with a lot of discussion about little man. I'm going to quote you from if you look at no transcript pages other than 1105 in the joint appendix. Mr. Goldstein said, I don't even understand why I'm being sued. And we said it is alleged that you withheld information that was and that little man did it. And you didn't disclose that to the prosecutor. And he said, if you say so, it was not a secret that we were alleging this. Oh, does it mention Howard Rice that you said that's the only page you want me to look at? Does it mention Howard Rice there in connection? Oh, yeah. No. Okay. Well, that's where we started this. All right. You said, all right. It's frustrating me because we I sat through a two week trial where all these issues were tried by consent. Nobody had a problem with it. And then all of a sudden at the end, they're saying the summary judgment ruling means because you had Howard Rice's name, you can't argue little man. You can't argue that Howard Rice is little man. None of it makes any sense. It's a pretextual throwaway argument. At the end of their brief, they didn't even expect it to get any traction. If you disagree with me, your honor, and you think they were ambushed by this, even though there was no objection throughout the whole trial, they still lose for three reasons. First, they didn't proffer the jury instruction that they're now saying should have been given. They can't reverse. The only remedy the judge has to have made a mistake, right? If they didn't object to the whole trial while we talked about little man and Howard Rice, where's the judge's mistake? The only mistake they're saying he made is he didn't give this limiting instruction, but they never mentioned it. It didn't come up at the jury instruction conference. They didn't even tender it till the day of and then they never brought it up. So he never declined to give it. There was a suggestion earlier that they preserved it. No. What they preserved was Judge Bennett gave a guidepost instruction where he said the jury could consider the Lehman note. And then for the first time in the whole trial, they said, well, wait a minute. The Lehman note would implicate Howard Rice. And he said, I disagree with you. That's preserved. I'm going to give this guidepost instruction. For whatever reason, they elected not to appeal what they did object to that they preserve. Now they're appealing that he didn't give this limiting instruction that they never proposed to him. You have to bend over so far backwards to find an error. I mean, what judge, they admit that all the Howard Rice evidence, all the little man evidence was properly admitted at trial. They admit it was all properly admitted. They admit that there was no objection. So if you were to say, if you were to say remand, then the same evidence would come in again. And this time they would give this instruction, instruction claims not to be considered. The construction, the instruction, your honors, doesn't say anything about little man. It says you cannot consider Howard Rice for some purposes. But that was already stipulated. This instruction doesn't change anything. First of all, the instruction doesn't make any sense. It doesn't even say, yes, Judge. In this, if I could do this later, I haven't don't have it at my fingertips. And if you don't, don't worry about it. But can you tell us where Howard Rice was admitted? Not little man, but Howard Rice was admitted during the trial. Can you give us J sites for Howard Rice? If you can't, we can do it ourselves. But if I was writing a brief, I would use that word passing because the whole trial, that was the whole trial. You know, basically, okay, if it's in the trial, give me one or two pages. What I pulled was the pages where we have little man. And I would refer you to join appendix 1105 1106, 865, 906, 1123. And there are the other pages we cited in our brief. Those are examples where we argued throughout that the suppression of little man violated Brady without objection. Every witness discussed Howard Rice. Here is plaintiff's exhibit 124. This is at page 2511 of the joint appendix. It's an FBI document that lists Howard Rice as being different from little man. There was a lot of energy at trial discussing whether Howard Rice was little man wasn't little man. You know, that's basically every witness here. I mean, we there was a lot of discussion about whether this could have been Howard Rice. These are the issues that were tried by consent. Judge Bennett did not believe that violated his summary judgment order. And I don't see how this guessed Judge Bennett in that respect. But regardless, there is no error that he made that you could reverse. I would like to talk about the hearsay issue for a minute. Before I run out of time. This is an extremely deferential review, because it's an evidentiary ruling. And it's particularly deferential when you're talking about the residual hearsay of exception, because it's by up to the trial court's discretion. Judge Bennett did not consider this on the fly. It was part of summary judgment, pre-trial hearings, motions eliminate, and he very carefully concluded what he concluded. Now, Judge Quattrobonne, there was a confusion at the last argument about a lot of FBI memos being discussed. All of the FBI memos were admitted by agreement, including all the hearsay in them. And both sides used many, many hearsay FBI memos by agreement. They were joint exhibits. They were without exception, some by pre-trial agreement. The only FBI exhibits that got anybody's attention were 10121 and 122. And the irony here is Judge Bennett agreed with them. He concluded that the majority of those memos were hearsay and were not subject to any exception. And he invited them to propose a limiting construction and they elected not to. For inexplicable reasons, they elected not to. He said, look, it is hearsay. If you want a limiting instruction, you can have it. The only thing he decided were the last two sentences that said that a member of the FBI transmitted this to the Baltimore Police Department and the Baltimore Police Department confirmed that they were leads. You cannot say that that is a gross abuse of discretion. His analysis was very clear. They were documents obtained by subpoena. There were all kinds of guarantees of trustworthiness. They had the FBI stamp. There was a stipulation of their authenticity. There was no incentive to lie. They were created contemporaneously. Judge Bennett said, in my discretion, I see circumstantial guarantees of trustworthiness. This is the kind of things we ask trial judges to make. This is the only error they have identified in the whole trial. They say, Mr. Levy, this trial was about police misconduct. And how can you say that those reports involving police conduct were inherently trustworthy? No, Your Honor, what it was was an FBI one-page report that said, here's some leads on a murder. We called the Baltimore Police Department. We communicated the leads. And they confirmed they were accurate. What Judge Bennett said is most of this memo is hearsay. All the leads, he said I agree with the defendants. This is not coming in. It's hearsay. If you want a curative instruction, you can have it. The only thing he said was subject to the residual instruction was, I believe that an FBI agent didn't make up in his report that he communicated to the Baltimore Police Department. Because why would he? There's no incentive to lie. That had indice of reliability. And don't forget, Your Honors, it was corroborated because Goldstein's hand tracked the notes. So you can say, hey, this might be a close call. I don't think it's a close call. But it's not the kind of thing that's reversible. And then don't forget, it's moot because Goldstein said he developed the evidence anyways, which makes it moot because then the hearsay doesn't matter. He admits he knew this information. There's no dispute that the information never got to the prosecutor. So it would be harmless error. Your Honors, I want to go into my rebuttal for one minute because I want to make one more point if I may. They've identified one hearsay determination that's not an error, and they've identified a jury instruction that they never tendered that makes no sense when you have the quantity of the trial. In their reply brief, they did an extraordinary thing on page 25. They said, you should rely on the invisible error doctrine. They said, surely there's an error here somewhere because if we lost, it must have been biased. It must have been some improper motive. If you look hard at it, basically what they're saying is because we lost, there must be an invisible error. We can't find this error. It's here somewhere. It's invisible. And if you have any lingering doubt, you should overturn. Now, that is not the standard. Lingering doubt about a jury verdict, you have to feel very strongly under the Seventh Amendment before you disturb a jury verdict. But I would suggest to you that that is a desperate litigant. Why are we second guessing the jury? It took them three hours. Why are we second guessing Judge Berges? He is not a softie. He is a former prosecutor. He's been on the bench a long time. He said nothing violated my summary judgment order. There were no objections. I got no problems with this. All they're really saying is that Mr. Berges is unworthy of justice, and they're wrong. They've identified no errors. This was a strong case, and there's no conceivable way to overturn this without stretching beyond all reasonable bounds, particularly in light of fabrication verdicts. All right. Thank you, Mr. Levy. You've got a little over two minutes left in your rebuttal time. Thank you. Mr. Redmond? Yes, Your Honor. First, simply on the 807 point, there is no discretion to violate the rule. The rule states that the name of the declarant must be provided in order to admit under that rule, and that simply wasn't there. That's an error. And going to that as well, the FBI notes the thing that was prejudicial wasn't what the leads were. The thing that was prejudicial was the assertion in the last parts that this was communicated to Goldstein. It didn't say who it was that communicated it. That was redacted. It didn't say who it was communicated to. That was redacted. It was the wrong phone number for where Mr. Goldstein could be reached, and the whole idea of him tracking of it. Yes, Your Honor, sorry. Yeah. Opposing counsel said you didn't proffer the jury instruction at all until after the fact. That's just false. Can you clarify that? Yes. It's cited in the briefs exactly where we discussed it. It was the... Was it at the charge conference? We, I believe, actually put a written... We submitted it in writing before the... I think it was the night before the charge conference. I'm not entirely sure the timing. It's in the brief, but also at the charge conference or when they were discussing what was going to be in the jury charge. That's when the judge said that, okay, I am going to say one of the things that they can consider for the Brady claim is the Lehman note, is defense plaintiff's exhibit 372. And when they said, oh, you're just going to say that that's there, that's when we realized, hey, you're saying that they can consider all of the Lehman note. That includes information that you had explicitly excluded from Brady consideration. Now, this is the confusion. He says, oh, we had... We mentioned Howard Rice. We mentioned Littleman all the time. Yes, those things were allowed to be discussed in the trial, but they weren't coming in for purposes of the Brady claim. They were coming in to show that he did a bad job investigating because he didn't do enough of the investigation. Detective Goldstein even asked Burgess about Littleman on the night he was arrested. He interrogated him about Littleman. When we pointed it out at the conference that you're going to allow them to go under this theory, we asked, you have to clarify that this part was excluded and this wasn't, but he refused to do that and he let them consider that and that may open the door to the whole Little Howard, Howard Rice, Littleman ledger man that Plaintiff's counsel performed in closing. But let me be perfectly clear that the Littleman did it line was specifically excluded from this consideration in the pretrial summary judgment order on joint appendix 532 through 33, where the court explained that, quote, Plaintiff alleges that defendants withheld various pieces of information taken together, pointed to Howard Rice as the real perpetrator, colon, A, Ronald Dyson's statement implicating someone known as Littleman and alleged it came from Howard that was the first example of this Howard Rice evidence that then because there was no dispute that Burgess had that information, the court granted Goldstein summary judgment on all Brady claims related to this, quote, pretrial Howard Rice evidence and the Littleman note from taking from what Howard Dyson, what Ron Dyson had provided to Sergeant Lehman and then got to Goldstein, that was the first example of this Howard Rice evidence that he was excluded. So Littleman did it, couldn't have been any kind of potential source of liability and as we explained in the brief, that was specifically excluded, but he let it in anyway and that, just like the FBI 121 and 122 notes, the ITAR drug related murder notes, which had four different police detectives redacted out, they said they provided it to, which makes no sense that that would be who they provided to for the Michelle Dyson, if the case detective was referring to the Michelle Dyson case, because as he's explained, there was only one detective on the Michelle Dyson case, but the case of the case detective that they were talking about was the ITAR drug related murders, plural case, whichever case that was, maybe it was something with Howard Rice, we simply don't know because so much was redacted, we have no idea who was saying it and who they were saying it to. But we explained that, yeah, for the Littleman, for the Brady claim, the only way the jury would know that Ron Dyson's statements implicating someone known as Littleman was excluded, would be if the jury instructions explicitly told them so, but the judge refused to do it and that was error and requires at the very minimum, a new trial because it effectively reversed the pretrial summary. Now, can I ask you, I know you only have a minute left, but I have a question. So opposing counsel said that if we would vacate the verdict on as to the Brady claim, but still affirm the verdict as to the fabrication claim that the 15 million still stands because it's one lump sum for any one of the four claims that the jury passed on, what's your response to that? I don't know of any way to divide it, to logically cut it up. He says it's indivisible, it's just one pot of money for, you know, if he, if in any one of those counts, he gets the 15 million. Unfortunately, that's I think that's correct, but the indivisibility is not just about the money. It is about everything in this case, because the bias of any one of these things, these claims. Wait, did you say you think that's correct? I don't, I do not know one way or the other, but the indivisibility, the indivisibility goes to bias as well. Any one of these things, any one of these individual claims that are allowed in all the evidence that's allowed in, improperly, it absolutely poisoned the jury's understanding of who Mr. Goldstein was and absolutely prejudiced their decisions on all the different claims. All right, thank you, Mr. Redmond. Mr. Lovie, you've got two minutes and 30 seconds left, if you want it. Hey, you're on mute. I think you're muted, sir. Can you hear me now? Yes. All right, I will try not to talk even faster, although I lost my time, so don't hold that against me there at the end. I want to start with the discretion point. Of course, a judge has discretion to admit evidence, even without a declarant identified. We cited the Simmons case, the Turner case, we found another real good one, 6 v. 466, F's up second at 799, and that case cites a bunch of other cases. Of course, the judge has discretion. There's no easy categories. It's a functional inquiry. I want to talk now to the little man. So where does the dust settle? You don't know if the little man and Howard Rison was excluded or not because you didn't see the whole trial. Why can we not defer to Judge Bennett? He wrote the summary judgment opinion. He saw the trial. He said, nobody violated my summary judgment order. We can read the transcript, though. We can read the transcript. And maybe you're in a better vantage point than Judge Bennett, but I will give you this as the trump card. If they thought that any of this evidence went near what had been excluded, then why in 10 days of trial was there not a single objection to any testimony or question about your withholding little man? That's one objection. Not like, hey, judge, are they getting close to the line? Nothing. Not just during closing, but during every witness as we hammered that they withheld the little man. Not one objection. Not one objection. And now they're going to come on appeal and say everybody knew this was out of bounds. It's just not reality. Judge Quattlebaum, your question before was that I just want to understand what you were asking for. If we were arguing that Howard Rice might be little man, what do you want to page for that throughout the trial? I was just trying to get to the point that to the extent little man might be allowed, Howard Rice might. And I couldn't tell if when you're saying it's throughout the trial, you were referring to little man or Howard Rice. So I was asking you where the name Howard Rice showed up. Oh, it showed up. I'm sorry. It showed up throughout the trial. And we were trying to show that Howard Rice was little man. And we were trying to say he was. They were trying to say he weren't. These are all issues that got tried without objection. If nothing else, you could decide this case on tried by consent. This is the case that was tried. And you don't even have to resolve what this summary judgment order means. You don't have to defer to Judge Bennett. They did not proper the jury instruction. Let's just be 100% clear about that. He said he wasn't clear. It was not proper. They want you to reverse a jury verdict for the failure to give a jury instruction, a limiting instruction that was not proper. And my final point on the fabrication count, you know, this is how trials work. If there is an independent theory of liability, Brian Rainey, that has nothing to do with the hearsay objection of the jury instruction, it can independently support the verdict. They're saying, oh, the whole trial's ruined because there was two sentences of hearsay, and the whole trial was ruined because the judge didn't give a limiting instruction that wasn't tendered. That's not how it works. This is a claim that stands independently. It has to do with Brian Rainey. It's got nothing to do with the FBI. It's got nothing to do with little man, and it stands. And, Your Honor, he did concede. You heard him correctly. It is a single unitary injury for which Mr. Burgess was injured, $15 million. And I was a little bit not to his credit when he backed off it, but we do have a tape. And the fact is, you can't get around it. That's how it works. Thank you, Mr. Levitz. You've gone over your time. I have. Thank you, Your Honor. Let me say that we appreciate both your arguments and, as you know, our traditions to come down and shake your hands and chat with you a bit. Obviously, we can't do that today. But nevertheless, we want you to know we appreciate your performance here today. Case is submitted, and the courtroom deputy can adjourn in court, signing it out. Thank you. Thank you. This honorable court stands adjourned, signing it back out to the United States and this honorable court.
judges: Henry F. Floyd, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.